

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
07/12/2019

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ALVIN SMOKED MEATS & EATS,** | § | **Case No. 18-36657** |
| **LLC,** | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

### SECOND STIPULATION AND ORDER (A) AUTHORIZING DEBTOR'S INTERIM USE OF CASH COLLATERAL, (B) PROVIDING ADEQUATE PROTECTION, AND (C) GRANTING RELATED RELIEF

This stipulation and consent order (the "**Stipulation**") is made as of July 11, 2019 by and between Alvin Smoked Meats & Eats, LLC, debtor and debtor-in-possession (the "**Debtor**") and Kapitus Servicing, Inc. (f/k/a Colonial Funding Network, Inc.) as servicing agent for Berkman Funding, LLC d/b/a Berkman Financial ("**Kapitus**", and together with the Debtor, the "**Parties**").

### RECITALS

A.      On November 30, 2018 (the "**Petition Date**") the Debtor filed with this Court a voluntary petition for relief under chapter 11 of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"). Pursuant to Bankruptcy Code §§ 1107 and 1108, the Debtor has retained possession of its assets and continued the operation and management of its business.

B.      No trustee, examiner or statutory committee of unsecured creditors (a "**Creditors Committee**") has been appointed in this case pursuant to Bankruptcy Code § 1102.

C.      This Court has jurisdiction over these proceedings and over the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

D.      As of the Petition Date, the Debtor and Kapitus were parties to certain Revenue

Based Factoring RBF/ACH Agreements dated April 12, 2017 ("**RBF Agreement**") pursuant to which Kapitus provided $44,600 for the purchase of $64,224.00 in receivables of the Debtor.  As of the Petition Date, the Debtor owes Kapitus the amount of $46,184.50 which includes the following: principal $41,994.00 plus attorney's fees of $3,300 plus interest at six percent (6%) from July 25, 2018 to November 30, 2018 of $890.50.

E.      Kapitus also asserts an ownership interest in the receivables per the RBF Agreements.  The Debtor's obligations under the RBF Agreement were collateralized by among other things Security Agreements and Guaranties by and between Debtor, Kapitus, and Mohmmed Ehasan Kabir, as guarantor, dated April 12, 2017 (the "**Security and Guaranty Agreement**"); UCC-1 Financing Statement filed on April 13, 2017 with the Texas Secretary of State, File Number 170012624285, by CT Corporation System, as representative  (the "**UCC-1**" and together with the RBF Agreements and the Security and Guaranty Agreements, the **"Existing Agreements"**).

F.      The Debtor admits, stipulates and agrees that, as of the Petition Date, the Debtor was indebted to Kapitus in the amount of $46,184.50 which includes the following: principal  in the amount of $41,994.00 plus attorney's fees of $3,300 plus interest at six percent (6%) from July 25, 2018 to November 30, 2018 of $890.50 (the "**Pre-Petition Debt**").

G.      The Debtor admits, stipulates and agrees that the Pre-Petition Debt is secured by a first priority, valid, binding, perfected and enforceable liens and security interests (the "**Pre-Petition Liens**") granted by the Debtor on all of the Debtor's personal property including all accounts, chattel paper, cash (whether under control of the Debtor or a third party), deposit accounts, documents, equipment, general intangibles, instruments, inventory, and investment property, whether obtained prior to, on or after the Petition Date (the "**Pre-Petition Collateral**").

H.      The Debtor agrees and acknowledges that as of the Petition Date, there were no

offsets, defenses, challenges, claims, or counterclaims of any kind or nature to any portion of the Pre-Petition Debt, and no portion of the Pre-Petition Debt is subject to avoidance, recharacterization, or subordination (contractual, equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

I.      The Debtor agrees and acknowledges that all of, *inter alia*, the receivables and cash proceeds generated from the operation of the Debtor's business, and the Debtor's inventory, constitutes income, proceeds, products, rents, and/or profits of the Pre-Petition Collateral and constitutes "cash collateral" within the meaning of Bankruptcy Code § 363(a) (collectively, the "**Cash Collateral**").

J.      The Debtor and Kapitus further agree that Kapitus has a first priority perfected lien and security interest in the Cash Collateral in accordance with Bankruptcy Code §§ 361, 363(a) and 552(b).

K.      Pursuant to Bankruptcy Code § 363(c)(3), the Debtor requires the consent of the Kapitus or an Order of the Bankruptcy Court to use the Cash Collateral.

L.      The Debtor cannot meet its ordinary operating expenses or maintain and preserve its business as a going concern business without the use of the Cash Collateral.

M.      The Debtor reasonably believes that the value of Debtor's estate will be maximized by the continuation of Debtor as a going concern business, and the use of Cash Collateral is essential to the continuation of operations.

N.      Kapitus is entitled to receive certain adequate protection in respect of the Debtor's use of the Pre-Petition Collateral to compensate for any decline in the value thereof resulting from (a) the use of the Cash Collateral, and (b) the use, sale, lease, or depreciation or other diminution in value of the Pre-Petition Collateral (the amount of any such diminution being referred to

3

hereinafter as the "**Adequate Protection Obligations**").

O.     The terms for the Debtor's use of Cash Collateral have been negotiated in good faith and at arm's length, and reflect the Debtor's exercise of prudent business judgment.

P.     On December 14, 2018, this Court entered the original Stipulation and Order (A) Authorizing Debtor's Interim Use of Cash Collateral, (B) Providing Adequate Protection, and (C) Granting Related Relief [ECF 38] (the "**Original Cash Collateral Order**").   The Original Cash Collateral Order remains in full force and effect and all terms are incorporated herein by reference.

Q.     On or about April 1, 2019, the Debtor and Kapitus agreed to continue making monthly adequate protection payments for each month following those adequate protection payments already approved in the Original Cash Collateral Order.  The Debtor and Kapitus intended to file a stipulation and order to approve the additional adequate protection payments beyond the payments already approved in the Original Cash Collateral Order; however, in connection with the preparation of this stipulation and order, the Parties realized that they did not file another stipulation and order.   The Parties seek to ratify and approve the monthly adequate protection payments that have been made by the Debtor to Kapitus following those already approved in the Original Cash Collateral Order (i.e., the payments made on May 1, 2019; June 1, 2019 and July 1, 2019).

**NOW, THEREFORE,** in consideration of their covenants and mutual promises, the Parties hereby stipulate and agree as follows:

## STIPULATION

1.     Incorporation of Recitals. The foregoing recitals are hereby incorporated by this reference and made a part of this Stipulation.

2.     Effectiveness of Stipulation. This Stipulation shall be immediately effective upon

entry by the Bankruptcy Court of an Order approving the same retroactive to the Petition Date.

3.    <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Stipulation, pursuant to Bankruptcy Code § 363(c)(2), the Debtor is authorized to use the Cash Collateral during the period from the Petition Date through the earlier of October 1, 2019 or the Termination Date (defined below).  The Debtor shall maintain the Cash Collateral in the same level that existed prepetition and not allow Cash Collateral to diminish.

4.    <u>Adequate Protection Payments</u>. As adequate protection for the Debtor's use of Cash Collateral, on or before the first (1st) day of each month, the Debtor shall pay to Kapitus the regular monthly payment of SEVEN HUNDRED FIFTY DOLLARS ($750.00) commencing on January 1, 2019 and payable only upon approval of this Stipulation.  These payments shall continue on the first of the month thereafter until the earlier of (i) confirmation of a chapter 11 plan, (ii) October 1, 2019 and (iii) the Termination Date.  These adequate protection payments shall be applied to the Debtor's obligations to Kapitus in accordance with the Existing Agreements or as may be determined by Kapitus in its sole discretion.   All payments by Debtor to Kapitus shall be remitted via ACH payment. The Debtor shall provide Kapitus with a voided check and written authorization allowing Kapitus to ACH debit from the account set forth on the voided check in accordance with the payment schedule set forth herein and with respect to any future adequate protection payments to which Kapitus and Debtor may agree and approved by this Court.  The adequate protection payments made by the Debtor to Kapitus following those already approved in the Original Cash Collateral Order (i.e., the payments made on May 1, 2019; June 1, 2019 and July 1, 2019) are hereby ratified and approved.

5.    <u>Adequate Protection Liens</u>. As adequate protection for any diminution in value of the Kapitus's interests in the Pre-Petition Collateral and post-petition interest, costs and fees (Post-

petition Indebtedness"), and as security of the Post-petition Indebtedness, and to the extent that the Cash Collateral is utilized by the Debtor, for the purposes of providing adequate protection within the meaning of Bankruptcy Code §§ 361 and 363, Kapitus is hereby granted (effective and perfected as of the Petition Date and without the necessity of the execution, recording or filing of mortgages, security agreements, pledge agreements, deposit control agreements, financing statements or other documents) valid and perfected replacement security interests in, and liens on (the "**Adequate Protection Liens**"), the same type of post-petition assets in which Kapitus held valid and perfected liens prior to the Petition Date, and all cash or other proceeds generated post-petition by the Pre-Petition Collateral (the "**Collateral**") to the same extent, validity and priority as existed on the Pre-Petition Collateral.  The Adequate Protection Liens shall constitute perfected liens on all of the Collateral as to which Kapitus held a valid and perfected lien as of the Petition Date to the same extent, validity and priority as existed on the Pre-Petition Collateral.  Kapitus's liens against the Debtor's Cash Collateral shall extend to any account holding such Cash Collateral, regardless of whether Kapitus has control over such account, and encumbers any Cash Collateral held in debtor-in-possession accounts required by applicable law.

6.     <u>Extent of Adequate Protection Liens</u>. The Adequate Protection Liens shall be enforceable against the Debtor, its estate and any successors thereto, including without limitation, any trustee or other estate representative appointed in this case, or any case under chapter 7 of the Bankruptcy Code upon the conversion or dismissal of this chapter 11 case, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Case**") to the same extent, validity and priority as existed on the Pre-Petition Collateral.  Except as provided herein, the Pre-Petition Liens and Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest hereafter granted in this case or any Successor Case, and

shall be valid and enforceable upon the dismissal of this case or any Successor Case, to the same extent, validity and priority as existed on the Pre-Petition Collateral.  The Adequate Protection Liens shall not be subject to Bankruptcy Code § 549.   To the extent that there are insufficient assets to satisfy the amount owed under the Adequate Protection Liens from other sources, the Adequate Protection Liens shall extend to the proceeds of avoidance actions under chapter 5 of the Bankruptcy Code.

7.     <u>Perfection of Adequate Protection Liens</u>. This Stipulation shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens, without the necessity of filing or recording any mortgage, financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable law) the Adequate Protection Liens, or to effect the priorities acknowledged and/or granted herein. The Debtor is authorized and directed to execute and deliver promptly to Kapitus any such mortgage, financing statement or other instrument or document as Kapitus may reasonably request. Kapitus may file photocopies of this Stipulation as a financing statement or mortgage with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statement, notices of lien, mortgage or similar instrument.

8.     <u>Adequate Protection Superpriority Claims</u>. As further adequate protection for the Debtor's Adequate Protection Obligations, Kapitus is granted as and to the extent provided by Bankruptcy Code §§ 503(b), 507(a) and 507(b), allowed superpriority administrative expense claims in this chapter 11 case and any Successor Cases in the amount of the Adequate Protection Obligations and to the same extent, validity and priority as existed on the Pre-Petition Collateral (the "**Adequate Protection Superpriority Claims**"), subject to the Carve-Out in paragraph 16

7

hereof.

9.  Priority of Adequate Protection Superpriority Claims. The Adequate Protection Superpriority Claims shall have priority over all other administrative expense claims and unsecured claims against the Debtor's estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to Bankruptcy Code §§ 326, 328, 330, 331, 364, 365, 503(a), 506(c), 507(a), 507(b), and 546(d) (to the extent permitted by law), subject to the Carve-Out in paragraph 16 hereof, to the same extent, validity and priority as existed on the Pre-Petition Collateral.

10.  No § 506(c) Surcharge.  The Debtor acknowledges that it has hereby waived the right to surcharge all Collateral, including but not limited to the Cash Collateral, under § 506(c) of the Bankruptcy Code.

11.  Modification of Automatic Stay. The automatic stay under Bankruptcy Code § 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Stipulation, including, without limitation, to: (a) permit the Debtor to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims and to make the Adequate Protection Payments; (b) permit the Debtor to perform such acts as Kapitus may request in its reasonable discretion to assure the perfection and priority of the liens granted herein; and (c) authorize the Debtor to take any other actions to effectuate the terms of this Stipulation, provided, however, any stay relief with respect to the exercise of remedies shall be in accordance with such provisions below or as otherwise ordered by the Court.

12.  Debtor's Obligations. The Debtor shall:

   (a)  Utilize Cash Collateral to pay only the Debtor's normal and regular expenses of the operation of its business;

8

(b)      Maintain all insurance policies required to conduct its business, including without limitation, general liability insurance, and obtain such additional insurance in the amount as is appropriate for the business in which the Debtor is engaged, naming Kapitus as loss payees, certificate holders and as additional insureds on all policies. The Debtor shall provide Kapitus with proof of all such coverage, as well as prompt notification of any change in such coverage which may hereafter occur;

(c)      Upon two business days' notice from Kapitus to Debtor's counsel, the Debtor shall provide Kapitus and its representatives, employees, experts or consultants reasonable access during normal business hours to the business offices of the Debtor to enable such individuals to conduct an examination of the Collateral and for inspecting and copying the Debtor's business records; and

(d)      All third party guaranties shall continue to guarantee and collateralize to Kapitus all post-petition use of the Cash Collateral by the Debtor, and such guarantors hereby consent to the entry of this Stipulation.

13.    <u>Disposition of Collateral</u>. The Debtor shall maintain, safeguard, and protect and shall not sell, transfer, lease, encumber or otherwise dispose of, or allow the disposal of, any portion of the Collateral outside of the ordinary course of its business without further Order of the Court.

14.    <u>Events of Default</u>. The occurrence of any of the following events, unless waived by Kapitus in writing, shall constitute an event of default, albeit as to ¶14(a), (c), (d), or (e) only, such occurrence shall not be an event of default unless such event of default is not cured after seven

9

days' written notice to the Debtor and its counsel at their addresses listed below (collectively, the "**Events of Default**"):

(a)    The failure by the Debtor to perform, in any material respect, any of the terms, provisions, conditions, covenants, or obligations under this Stipulation or the Existing Agreements (except as may be modified by this Stipulation);

(b)    The entry of an order by the Court granting any other party (i.e. not the Parties hereto) relief from or modifying the automatic stay under Bankruptcy Code § 362(a); except for a modification or lifting of the automatic stay to allow an over-secured creditor or equipment lessor with a lien on equipment from foreclosing or otherwise removing such equipment;

(c)    Dismissal of this chapter 11 case or conversion of this chapter 11 case to a chapter 7 case, or appointment of a chapter 11 trustee or examiner, or other responsible person;

(d)    A material default by the Debtor in reporting financial or operational information as and when required under this Stipulation, the Existing Agreements, or the Local Bankruptcy Rules of the Southern District of Texas; and/or

(e)    The Debtor's failure to timely pay all necessary use and occupancy expenses during the post-petition period.

15.    <u>Rights and Remedies upon Termination Date</u>. Unless otherwise agreed to in writing by Kapitus, after the earlier of the occurrence of: (i) October 2, 2019 and: (ii) an Event of Default (in the event of the occurrence of an event set forth in ¶14(b) herein) or an uncured Event of Default

10

(in the event of the occurrence of an event set forth in as to ¶14(a), (c), (d), or (e) herein) (the earlier of such date specified in ¶15(i) and ¶15(ii) herein shall be the "**Termination Date**"): (a) Debtor's right to use Cash Collateral shall be immediately terminated, (b) the automatic stay as to Kapitus's Collateral shall be immediately vacated, and (c) the Kapitus may immediately exercise any and all rights and remedies permitted by applicable law to enforce their liens and security interests in and to the Collateral to the same extent, validity and priority as existed on the Pre-Petition Collateral, (y) in the event of an Event of Default set forth in ¶14(b) herein, without further order of the Court, and (z) in the event of an Event of Default set forth in ¶14(a), (c), (d), or (e) herein, by settling an order granting such relief, together with an affidavit of default, on five business days' notice upon Debtor's counsel, the Office of the United States Trustee and any person or entity filing a notice of appearance in the Debtor's case, during which time the Debtor may counter-settle an order permitting further use of Cash Collateral or the continuance of the automatic stay.  Notwithstanding any terms to the contrary contained herein, the Debtor shall be entitled to cure a default under ¶14(a), (c), (d), or (e) only two times and upon a third default, Kapitus may exercise all available rights and remedies.

16.     Carve Out. The Adequate Protection Liens and the Adequate Protection Superpriority Claims shall be subordinate solely to the following (together, the "**Carve Out**"): (a) fees under 28 U.S.C. § 1930 and 31 U.S.C. § 3717, and (b) the costs of administrative expenses not to exceed $7,500.00 in the aggregate that are permitted to be incurred by any chapter 7 trustee in the event of a conversion of the Debtor's chapter 11 case pursuant to Bankruptcy Code § 1112.

17.     Budget: As a condition to use Cash Collateral, the Debtor will operate strictly in accordance with the attached Budget and to spend Cash Collateral, not to exceed ten percent (10%) above the amount shown in the Budget. The Debtor shall provide Kapitus with monthly reports

which reflect its actual receipts and expenditures for the prior month. Nothing in this Order shall authorize the disposition of any Pre-Petition Collateral outside the ordinary course of business without the prior written consent of the Kapitus.

18. <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>. The rights of any creditor, party in interest or committee, whether formal or informal, including a Creditors' Committee, to dispute or challenge the validity, perfection, extent, amount and priority of Kapitus's claims and liens and/or the right to dispute Kapitus's right to any Adequate Protection Payments authorized under this Order (collectively, a "**Challenge**") are expressly preserved for sixty (60) days from the date that counsel for a Creditors' Committee has been retained, if a Creditors' Committee is formed, and as to all other parties in interest, seventy-five (75) days from the date that the Court has entered the Original Cash Collateral Order (the "**Challenge Period**"). Upon the expiration of the Challenge Period (the "**Challenge Period Deadline**"), without the filing of a Challenge: (a) any and all such Challenges by any party (including, without limitation, any Creditors' Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in this chapter 11 case, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, and (b) all of the Debtor's stipulations, acknowledgements, waivers, releases, affirmations and other stipulations to the priority, extent, and validity as to Kapitus's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in interest in this chapter 11 case and any subsequent chapter 7 case. Nothing in this Stipulation vests or confers on any Person (as defined in the Bankruptcy Code), including any Creditors' Committee or any other statutory committee appointed in the chapter 11 case, standing or authority to pursue any cause of action

belonging to the Debtor's estate.  The costs incurred in any such Challenge shall not be paid from the Carve Out, other than expenses of investigation.

19.     <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Stipulation does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary, and the guarantors of the Pre-Petition Debt hereby acknowledge and agree that they are not entitled to the benefit of the Debtor's automatic stay under 11 U.S.C. §362 and that neither they nor the Debtor shall seek to extend the protections of the automatic stay to them.

20.     <u>No Liability to Third Parties</u>. In not objecting to the Debtor's use of Cash Collateral under the terms set forth herein or in taking any other actions related to this Stipulation, Kapitus shall have no liability to any third party except to the extent permitted by law; and (ii) shall not owe any fiduciary duty to the Debtor, its creditors, its estate, or to each other. Kapitus's relationship with the Debtor and/or each other shall not constitute or be deemed to constitute a joint venture or partnership with the Debtor and/or each other.

21.     <u>Rights Preserved</u>. This Stipulation shall not be construed in any way as a waiver or relinquishment of any rights that the Debtor or Kapitus may have under the Existing Agreements or at law.  Notwithstanding anything herein to the contrary, the entry of this Stipulation is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) Kapitus's right to seek any other or supplemental relief in respect of the Debtor, including the right to seek additional adequate protection or restriction on Cash Collateral (without prejudice to any other person's right to object to or otherwise oppose such additional adequate protection or restriction on Cash Collateral); (b) Kapitus's right to object to impermissible use of Cash Collateral; (c) Kapitus's agreement, consent, or acquiescence to the terms of any plan of reorganization by virtue of any

term or provision of this order; (d) Kapitus's right to assert any other rights, remedies, or defenses available to Kapitus to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses, and opportunities to respond being specifically reserved by Kapitus or (e) any of the rights or remedies of Kapitus under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Bankruptcy Code § 362, and (ii) request dismissal or conversion of this chapter 11 case.  Nothing herein contained shall prejudice the right of Kapitus to seek modification, extension, or termination of this order.

22.     <u>No Admission</u>:  Neither this Stipulation, nor Kapitus's consent to the entry of this stipulated order shall constitute an admission by Kapitus that the protection to Kapitus is adequate. Further, neither entry of this Order, nor consent to this Order shall constitute an agreement by Kapitus to the treatment of Kapitus's claim under any plan of reorganization.

23.     <u>Additional Documents</u>: The Debtor shall promptly provide to Kapitus such additional or other financial information as Kapitus may reasonably request from time to time.

24.     <u>Binding Effect of Stipulation</u>. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Stipulation shall become valid and binding upon the Debtor, Kapitus, all other creditors of the Debtor, any committee appointed in this chapter 11 case, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in this chapter 11 case, any chapter 7 case, or upon dismissal of this chapter 11 case or any chapter 7 case. In the event of any inconsistency between the provisions of this Stipulation and any other order relating to the Debtor's use of cash collateral in this case, the provisions of this Stipulation shall govern and control.

14

25.     <u>Modification, Amendment or Vacatur of Stipulation</u>. In the event any or all of the provisions of this Stipulation are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, such modification, amendment or vacatur shall not affect the validity, perfection, priority, allowance, enforceability or non-availability of any advances, payments or use of Cash Collateral whether previously or hereunder, or lien, claim or priority authorized or created hereby. Any liens or claims granted to Kapitus hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Stipulation shall be governed in all respects by the original provisions of this Stipulation, including entitlement to all rights, remedies, privileges and benefits granted herein.

26.     <u>Survival</u>. The provisions of this Stipulation and any actions taken pursuant hereto shall survive entry of any order that may be entered: (a) confirming any chapter 11 plan in this case; (b) converting this chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing this chapter 11 case; (d) the appointment of a chapter 11 trustee or examiner; or (e) pursuant to which this Court abstains from hearing this chapter 11 case. The terms and provisions of this Stipulation, including the claims, liens, security interests and other protections granted pursuant to this Stipulation, notwithstanding the entry of any such order, shall continue and shall maintain the same extent, validity and priority as provided by this Stipulation.

27.     <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Stipulation according to its terms.

28.     <u>Counterparts</u>. This Stipulation may be executed in counterparts, all of which taken together shall constitute one and the same instrument. The Parties may execute this Stipulation by signing any such counterpart and delivering such counterpart by facsimile, electronically or otherwise.

15

29.    <u>Authorization</u>. Each of the undersigned represents and warrants that it has full and requisite power and authority to execute and deliver this Stipulation. The Parties are authorized, empowered and directed to execute and deliver all other agreements, instruments and documents and take any and all other actions in order to effectuate this Stipulation.

[Signature Page Follows]

Dated: July 11, 2019

DEBTOR

/s/ Mohmmed Ehasan Kabir
Mohmmed Ehasan Kabir
Alvin Smoked Meats & Eats, LLC
12319 Field Brook Ct
Houston, TX 77089-5650

KAPITUS FUNDING, INC. F/K/A COLONIAL
FUNDING NETWORK, INC.  AS SERVICING
AGENT FOR BERKMAN FUNDING, LLC
D/B/A BERKMAN FINANCIAL

/s/ Holly Falkowitz
Holly Falkowitz
Vice President and Deputy General Counsel
120 West 45th Street
New York, NY 10036
Tel. (646) 475-5972
hfalkowitz@kapitus.com

COUNSEL TO THE DEBTOR

/s/ Michael L. Hardwick
Michael L. Hardwick
Michael Hardwick Law, PLLC
2200 North Loop West, Suite 116
Houston, TX 77018
832-930-9090
michael@michaelhardwicklaw.com

COUNSEL TO KAPITUS FUNDING, INC.
F/K/A COLONIAL FUNDING NETWORK, INC.

/s/ Charles M.  Rubio
Charles M.  Rubio
Diamond McCarthy LLP
909 Fannin, Suite 3700
Houston, TX 77010
(713) 333-5100
crubio@diamondmccarthy.com

So Ordered.

Signed:  July 12, 2019

Jeffrey P. Norman
United States Bankruptcy Judge

17