

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/01/2019

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 18-36657-H5-11 |
| | § | |
| ALVIN SMOKED MEATS & EATS, LLC | § | |
| | § | |
| *Debtor(s)* | § | CHAPTER 11 |

### ORDER CONFIRMING DEBTOR'S 2nd AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11 AND APPROVING DISCLOSURE STATEMENT
(docket #61, 75)

**AT HOUSTON, TEXAS** on this date came before this Court debtor's 2nd Amended Plan of Reorganization for Small Business Under Chapter 11 pursuant to Title 11 U.S.C. § 1129 (docket #75), and the debtor's Disclosure Statement pursuant to Title 11 U.S.C. § 1125 (docket #61). The Court, after notice and hearing, based upon the evidence presented, testimony of witnesses, and any argument of counsel, finds as follows:

1. The Plan, Disclosure Statement, and a ballot for accepting or rejecting the Plan have been served upon all creditors and parties in interest;

2. Notice of hearing on confirmation of the Plan and final approval of the Disclosure Statement was given in accordance with Title 11 United States Code, the Federal Rules of Bankruptcy Procedure, the Local Rules for the Southern District of Texas, and the Orders of this Court;

3. The Disclosure Statement complies with all applicable provisions of Title 11 Untied States Code. The Plan complies with all applicable provisions of Title 11 United States Code and the Federal Rules of Bankruptcy Procedure relating to confirmation;

4. The 2nd Amended Plan of Reorganization for Small Business Under Chapter 11, appearing as docket #75, should be Confirmed pursuant to Title 11 U.S.C. § 1129.

It is therefore:

**ORDERED** that the Disclosure Statement appearing as docket #61 is APPROVED under Title 11 U.S.C. § 1125. It is further;

**ORDERED** that the 2nd Amended Plan of Reorganization for Small Business Under Chapter 11, appearing as docket #75 and attached to this Order as Exhibit A, is hereby CONFIRMED pursuant to Title 11 U.S.C. § 1129. It is further;

**ORDERED** that in accordance with Title 11 U.S.C. § 1142, debtor is authorized and directed, without the necessity of any further approval, to immediately take any action necessary or appropriate to implement, effectuate, and consummate the Plan and any transactions contemplated thereby or by this Order in accordance with their respective terms. It is further:

**ORDERED** that the reorganized debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time that this Court enters a final decree closing this chapter 11 case, enters an order converting the case to a case under chapter 7, or an order dismissing this case. After confirmation the reorganized debtor shall file with this Court and serve upon the United States Trustee a financial report for each quarter, or portion thereof, that this chapter 11 case remains open, in a format prescribed by the United States Trustee.

Signed: August 01, 2019

Jeffrey P. Norman
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 18-36657-H5-11 |
| | § | |
| ALVIN SMOKED MEATS & EATS, LLC | § | |
| | § | |
| *Debtor(s)* | § | CHAPTER 11 |

## 2nd AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER CHAPTER 11

**Alvin Smoked Meats & Eats, LLC's 2nd Amended Plan of Reorganization, Dated July 14, 2019.**

### Article 1: Summary

This plan of reorganization (*the Plan*) under chapter 11 of the bankruptcy code (*the Code*) proposes to pay the creditors of Alvin Smoked Meats & Eats, LLC (*the Debtor*) from cash flow from operations and future income.

This plan provides for:  
    1    class of priority claims;  
    8    classes of secured claims;  
    1    class of non-priority unsecured claims; and  
    1    class of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at approximately **100** cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### Article 2:  Classification of Claims and Interests

2.01   **Class 1**……………………..   All allowed claims entitled to priority under § 507(a) of the Code (*except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)*). Debtor's pre-petition priority creditors meeting the above classification are listed below: **None**

2.02   **Class 2**…………………….   All allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to set-off) to the extent allowed as secured claims under § 506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim. Debtor's pre-petition secured claims are separately classified, as outlined below:

**2.01.**   The claim of **Brazoria County Tax Assessor-Collector** to the extent as an allowed secured claim under § 506 of the Code.

**2.02.**   The claim of **City of Houston** to the extent as an allowed secured claim under § 506 of the Code.

**2.03.**   The claim of **Kapitus Servicing, Inc., f/k/a/ Colonial Funding Network, Inc., as servicing provider of Blue Fund Capital Inc. ("Colonial")** to the extent as an allowed secured claim under § 506 of the Code.

**2.04.**   The claim of **Acme Company aka Mantis Funding** to the extent as an allowed secured claim under § 506 of the Code.

**2.05.**   The claim of **Green Capital Funding, LLC** to the extent as an allowed secured claim under § 506 of the Code.

**2.06.**   The claim of **Everest Business Funding** to the extent as an allowed secured claim under § 506 of the Code.

**2.07.**   The claim of **Lane Equipment Company** to the extent as an allowed secured claim under § 506 of the Code.

**2.08.**   The claim of **US Foods, Inc.** to the extent as an allowed secured claim under § 506 of the Code.

2.03   **Class 3**…………………….   All non-priority unsecured claims allowed under § 502 of the Code.

2.04    **Class 4……………………..**    Equity interests of the Debtor.

**Article 3:  Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees**

3.01    **Unclassified Claims………**    Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    **Administrative Expense Claims…………………….**    Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Debtor's administrative expense claims are estimated below:

**Michael Hardwick Law, PLLC**: $15,000.00 (estimated), less any retainer on hand, subject to final approval of the Bankruptcy Court.

**Texas Workforce Commission:** $229.32, plus any applicable penalties/interest that have accumulated as of the effective date of the plan.

**Texas Comptroller of Public Accounts:** $494.61, plus any applicable penalties/interest that have accumulated as of the effective date of the plan.

**Texas Comptroller of Public Accounts:** $3,611.05, plus any applicable penalties/interest that have accumulated as of the effective date of the plan.

**Texas Comptroller of Public Accounts:** $1,755.88, plus any applicable penalties/interest that have accumulated as of the effective date of the plan.

3.03    **Priority Tax Claims………**    Each holder of a § 507(a)(8) priority tax claim will receive regular installment payments equal to the allowed amount of such claim over a period ending not later than March 13, 2023, with interest pursuant to § 511.  Debtor's § 507(a)(8) priority tax claims are listed below:

**Texas Comptroller of Public Accounts:** $1,281.81 to be paid in monthly installments of $56.52 per month beginning August 1, 2019 and ending July 1, 2021 with interest pursuant to § 511.

        **Texas Comptroller of Public Accounts:** $551.14 to be paid in full on the effective date of the plan, with interest pursuant to § 511.

        **Texas Workforce Commission:** 4,096.75 to be paid in monthly installments of $182.49 per month beginning August 1, 2019 and ending July 1, 2021 with interest pursuant to § 511.

3.04 **Statutory Fees……………….** All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

3.05 **Prospective Quarterly Fees………………………..** All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

**Article 4: Treatment of Claims and Interests Under the Plan**

4.01 Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Claim |
|---|---|---|
| Class 1 – Priority Claims Excluding those in Article 3 | N/A | None. There are no claims entitled to priority in this class of claims. |
| Class 2.01 – Secured Claim of **Brazoria County Tax Assessor-Collector** | Impaired | Claim: $2,283.70, plus any accrued penalties/interest from the date of filing the order for relief. |

The secured claim of the Brazoria County Tax Assessor-Collector will be paid in equal monthly installments over a 1-year period following the effective date of the plan, with interest accruing at 12% pursuant to § 511. Thus, payments to the Brazoria County Tax Assessor-Collector will be $202.90 beginning on the 15th day of the first month following <u>30 days</u> after the effective date of the plan. The last payment to Brazoria County Tax Assessor-Collector will be for any and all remaining amounts due to capture any variations based on interest, fees, and the like. <u>Brazoria County Tax Assessor-Collector shall retain its liens until the taxes are paid in full. Failure of debtor to timely pay the 2019 taxes will constitute an event of default and will be subject to the provisions of Article 10.02.</u>

| Class | Impairment | Claim |
|---|---|---|
| Class 2.02 – Secured Claim of **City of Houston** | Impaired | Claim: $161.00, plus any accrued penalties/interest from the date of filing the order for relief. |

The secured claim of the City of Houston will be paid in full on the effective date of the plan as a convenience claim, with interest accruing at 12% pursuant to § 511.  <u>The City of Houston shall retain its liens until the taxes are paid in full.  Failure of debtor to timely pay the 2019 taxes will constitute an event of default and will be subject to the provisions of Article 10.02.</u>

| | | |
|---|---|---|
| Class 2.03 – Secured Claim of **Kapitus Servicing, Inc., f/k/a/ Colonial Funding Network, Inc., as servicing provider of Blue Fund Capital Inc. ("Colonial")** | Impaired | Claim: $43,184.50 |

The secured claim of Colonial will be paid in equal monthly installments over a 5-year period following the effective date of the plan, with interest accruing at 6%.  Thus, payments to Colonial Funding Network, Inc. will be $834.88 beginning on the 15th day of the first month following 60 days after the effective date of the plan.

Payments to Colonial will be made via ACH.  If the Debtor changes the bank account from which such ACH debits are being remitted, it shall provide Colonial, within 5 business days of such change, the new bank account information and a written authorization to deduct payments via ACH from such account in accordance with the terms of the order confirming the plan.  Any fees incurred by Colonial due to rejected ACH debits shall be due and payable by Debtor as they accrue in accordance with the fee schedule in the Revenue Based Factoring Agreement RBF/ACH dated July 17, 2017 between the parties (the "Revenue Based Factoring Agreement").

The 60th payment to Colonial will be for any and all remaining amounts due to Colonial to capture any variations based on interest, fees, and the like.

Notwithstanding any terms to the contrary in the Plan or the Confirmation Order, the secured debt shall be secured, post confirmation, by the same assets described in Colonial's UCC Financing Statement No. 170012624285, filed on April 13, 2017, with the Texas Secretary of State (with the Secured Party's name being C T Corporation, as representative).  The security interest shall be perfected as of the date of entry of the Confirmation Order without the need to file or execute any document as may otherwise be required under applicable non-bankruptcy law.

Colonial is authorized, but not required, to file a new post confirmation UCC financing statement to continue the perfection of the prepetition security interest described in UCC Financing Statement No. 170012624285, filed on April 13, 2017, with the Texas Secretary of State.

All other terms of the Revenue Based Factoring Agreement not expressly modified by Plan or Confirmation Order shall remain in full force and effect, including maintaining business-interruption insurance naming Colonial as a loss payee and providing Colonial with financial reporting as requested by Colonial.  The Revenue Based Factoring

Agreement as modified by the Plan and the Confirmation Order shall be binding upon and enforceable against the Debtor to the fullest extent under applicable law.

All terms of the guaranties of Mohammed Ehasan Kabir and any other existing guaranties shall remain in full force and effect and shall be binding upon and enforceable against the guarantors to the fullest extent under applicable law.

Notwithstanding anything in the Plan or Confirmation Order to the contrary, with respect to Colonial only, the Plan and/or Confirmation Order shall not release or discharge any entity, other than the Debtor, solely as provided in the Plan and/or Confirmation Order, from any liability owed to Colonial under the Revenue Based Factoring Agreement, including, without limitation, interest, costs, and attorneys' fees and expenses. This provision shall not be an admission by any party that such liability exists.

Notwithstanding anything in the Plan and/or Confirmation Order to the contrary, with respect to Colonial only, the Plan and/or Confirmation Order shall not limit Colonial's setoff rights under 11 U.S.C. Section 553 or any rights to recoupment. Nothing in the Plan and/or Confirmation Order shall be interpreted to enjoin or limit Colonial from asserting those rights. This provision is not an admission by any party that such setoff or recoupment rights exist.

The Debtor will take all actions, execute, and deliver any and all documents reasonably necessary to carry out the intent of its agreement for the treatment of Colonial's secured claim as set forth in the Plan and Confirmation Order including, without limitation, to maintaining the perfection of Colonial's security interests described in Colonial's filed Proof of Claim and with respect to the obligations under the Revenue Based Factoring Agreement, the existing guaranty (or guaranties), the Plan, and the Confirmation order.

Class 2.04 – Secured Claim of **Acme Company aka Mantis Funding**     Impaired     Claim: $20,814.47

The secured claim of Acme Company aka Mantis Funding is $5,083.43 and will be paid in equal monthly installments over a 5-year period following the effective date of the plan, with interest accruing at 6%. Thus, payments on the secured claim of Acme Company aka Mantis Funding will be $98.28 beginning on the 15th day of the first month following 60 days after the effective date of the plan. The 60th payment to Acme Company aka Mantis Funding will be for any and all remaining amounts due to capture any variations based on interest, fees, and the like. Any remaining claim of Acme Company aka Mantis Funding will be treated as a general, unsecured claim and paid pro-rata pursuant to the terms of Class 3 claims.

Notwithstanding any terms to the contrary in the Plan or the Confirmation Order, the secured debt shall be secured, post confirmation, by the same assets described in Acme Company aka Mantis Funding's UCC Financing Statement No. 170029087842, filed on August 24, 2017, with the Texas Secretary of State. The security interest shall be perfected as of the date of entry of the Confirmation Order without the need to file or execute any

document as may otherwise be required under applicable non-bankruptcy law. Upon completion of the secured claim under this plan, Acme Company aka Mantis Funding shall file its termination statement with the Texas Secretary of State regarding UCC Financing Statement No. 170029087842. Such statement shall be filed within 30 days of receipt of the final secured claim payment due under this payment to Acme Company aka Mantis Funding.

Class 2.05 – Secured Claim of **Green Capital Funding, LLC**     Impaired     Claim: $22,412.81

The secured claim of Green Capital Funding, LLC is wholly unsecured. Thus, the claim of Green Capital Funding, LLC will be treated as a general, unsecured claim and paid pro-rata pursuant to the terms of Class 3 claims.

Class 2.06 – Secured Claim of **Everest Business Funding, LLC**     Impaired     Claim $45,937.59

The secured claim of Everest Business Funding, LLC is wholly unsecured. Thus, the claim of Everest Business Funding, LLC will be treated as a general, unsecured claim and paid pro-rata pursuant to the terms of Class 3 claims.

Class 2.07 – Secured Claim of **Lane Equipment Company**     Unimpaired     Claim: $7,364.37

The secured claim of Lane Equipment Company shall continue be paid according to its contractual terms.

Class 2.08 – Secured Claim of **US Foods, Inc.**     Impaired     Claim: $7,023.14

The secured claim of US Foods, Inc is wholly unsecured. Thus, the claim of US Foods, Inc. will be treated as a general, unsecured claim and paid pro-rata pursuant to the terms of Class 3 claims

Class 3 – **Non-priority Unsecured Creditors**     Impaired     Est. Claims: $95,516.53

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. **The allowed general unsecured claims will be paid 100% of their claim in 60 monthly payments.** Payments will be due and payable beginning on the 15th day of the first month following 60 days after the effective date of the plan. The amount to be paid pro-rata is currently estimated at $95,516.53.

Class 4 – **Equity Security Holders of the Debtor**   Impaired

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor.  **Mohammed E. Kabir** is the only equity interest holder in the debtor and will retainer his ownership interest in the corporation.  Mr. Kabir will receive no distributions under this plan on account of any pre-petition insider claims.

**Article 5:  Allowance and Disallowance of Claims**

5.01   **Disputed Claim…………...**   A disputed claim is a claim that has not been allowed or disallowed (by a final non-appealable order), and as to which either:

(i)  a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02   **Delay of distribution on a disputed claim……………**   No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03   **Settlement of disputed claims……………………...**   The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Article 6:  Provisions for Executory Contracts and Unexpired Leases**

6.01   **Assumed executory contracts and unexpired leases………………………**   (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

- **Alvin Properties, LLC**
- **Lane Equipment Company**
- **TimePayment**

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if

applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **60** days after the date of the order confirming this Plan.

## Article 7:  Means for Implementation of the Plan

The plan of reorganization will be funded by the Debtor through cash flow from operations and future income. The current management, Mohammed E. Kabir, will remaining in control.

## Article 8:  General Provisions

| | | |
|---|---|---|
| 8.01 | **Definitions and Rules of Construction……………...** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan. |
| 8.02 | **Effective Date…………….** | The effective date of this Plan is the first business day following the date that is **30** days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability……………….** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect…………….** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to, the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions…………………..** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect………..** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |

| | | |
|---|---|---|
| 8.07 | **Corporate Governance…..** | New organizational documents will prohibit the issuance of new, non-voting securities and provide for an appropriate distribution of voting power if additional classes of securities possessing such power are issued. |
| 8.08 | **Retention of Jurisdiction...** | After confirmation, the Court retains and may exercise jurisdiction over proceedings concerning: (1) whether Debtor is in material default under this Plan, (2) whether the time for performing any Plan obligation should be extended, (3) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan or in the Disclosure Statement filed with the Court, (4) whether the case should be dismissed or converted to one under chapter 7, (5) any proceedings to allow or disallow claims or administrative expenses (except those incurred after the Effective Date, unless otherwise stated in attached exhibits to the Plan or Disclosure Statement), (6) settlements or compromises under Rule 9019, (7) any proceedings under §§ 110, 329, or 362, or regarding sanctions, and (8) any other proceedings, whether or not commenced or contemplated as of the Effective Date, regarding the implementation, interpretation, or enforcement of this Plan or the administration of the bankruptcy case or estate. The retention of jurisdiction, however, will end on the later of (a) 2 years after the Effective Date, or (b) as to any then-pending adversary proceeding or contested matter, when it is finally resolved by a judgment or order. |

**Article 9:  Discharge**

**Discharge if the Debtor is a corporation and § 1141(d)(3) is not applicable:**

On the effective date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

   (i)   imposed by this Plan; or

   (ii)  to the extent provided in § 1141(d)(6).

**Article 10:  Other Provisions**

10.01 **Vesting of Property**……... On the Effective Date, title to all assets and properties dealt with by the Plan shall vest in Debtor, free and clear of all claims and interests other than any contractual secured claims granted under any lending agreement, on the condition that Debtor complies with the terms of the Plan, including the making of all payments to creditors provided for in such Plan.  If Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in Debtor and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

10.02 **Default**……………………. Any creditor remedies allowed by 11 U.S.C. § 1112(b)(4)(N) shall be preserved to the extent otherwise available at law.  In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the reorganized Debtor to make a payment to a claimant pursuant to the terms of the Plan shall be an Event of Default.  If the reorganized Debtor fails to cure an Event of Default within ten (10) days after service of written notice of default, the claimant may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this Court.  Notice of the default shall be served by first class mail upon the reorganized Debtor at:  Alvin Smoked Meats & Eats, LLC, 1109 W Highway 6, Ste D, Alvin, TX 77511, Attn: Mohammed E. Kabir, and upon Debtor's attorney at: Michael Hardwick Law, PLLC, 2200 North Loop West, Suite 116, Houston, TX 77018, Attn:  Michael L. Hardwick.

The Debtor shall be allowed to cure up to two (2) defaults.  Upon a third default, the claimant, at its option, may declare the default non-cureable and proceed to collect the remainder of the debt.

(this space intentionally left blank)

**Respectfully Submitted:**


/s/ Mohammed E. Kabir
**Alvin Smoked Meats & Eats, LLC**
**by: Mohammed E. Kabir, its President**


**MICHAEL HARDWICK LAW, PLLC**

/s/ Michael L. Hardwick
Michael L. Hardwick
State Bar No. 24088745
2200 North Loop West, Suite 116
Houston, TX 77018
(832) 930-9090 – Telephone
(832) 930-9091 – Facsimile
michael@michaelhardwicklaw.com
Attorney for Debtor